Good morning. We'll proceed to hear argument this morning in number 19-55036, Sensory NeuroStimulation, Inc. v. Alex Azar. Ms. Coberley, you may begin. Thank you. Good morning, and may it please the Court, I'm pleased to be with you this morning in this unusual format. We're here today, Your Honors, because the decision below leaves my client with no review at all of an agency action that has effectively shut down its business. Sensory makes Relaxis, which is a prescription-only drug pretreatment for a medical condition that impacts millions of people. Without it, sufferers are left with opioids or a drug that's shown to make the condition worse. Like any manufacturer, Sensory needed three things to proceed with this device. It needed a patent, FDA clearance, and a national coverage determination so that the device would be covered by Medicare and other insurance. It got the first two, and it made every effort to pursue the third, including formally requesting an NCD, as it is entitled to do. But the agency said no without even being willing to start the proper process. A single official simply announced that the device would not be covered. Now, our brief points out a number of problems with the District Court's decision, and we stand by them all, but I'd like to focus my time today on the issue that seems to most dramatically separate the parties before this Court, which is the question whether Sensory had any avenue available to it for review at the administrative agency. The government says yes, we say no, and I'd like to explain why. Because there was no other relief available to Sensory, this Court could find jurisdiction either under Section 1331 through the Illinois Council exception, or under Section 405G through waiver of the exhaustion requirement. The government points to two possible avenues for review. The problem is that those avenues are both available only to beneficiaries and not to manufacturers like Sensory, and neither one of them could provide the relief that Sensory needs, which is a positive national coverage determination. First, the government says that Sensory could follow the four-level administrative review process for a determination by the agency that an individual claim of benefits would be denied. But the government concedes that this is a process that is only available to beneficiaries of Medicare, the people who are actually seeking the treatment and asking for reimbursement through Medicare. Also, whether... Is it really the case that this, you say that this device should have a national coverage determination that, you know, should be covered for large numbers of people, but there isn't one person who's been covered? Well, the device isn't being manufactured, and it's not being prescribed, and it's not in use, so there are no claims. In order to, as a manufacturer, in order to even produce and distribute this device, it needed a national coverage determination or else it's not able to get funding and access the systems of distribution that distribute medical devices for purposes of Medicare. So, there isn't a claim. There is no claim. Also, would it be possible for a person who wanted to use it to get an assignment from Sensory and to proceed under an assignment? The district court relied on that in part. Isn't that correct? So, an individual could assign their own individual claim for benefits to a manufacturer. Whether they can do that in advance of actually being prescribed the treatment, I'm not sure, but yes, that this right for review can be assigned, but the issue for review remains the individual benefits determination. This avenue for review could not produce a national coverage determination. If the result of that review would only be that that particular person is entitled to coverage, and as the courts, as both the District of D.C. explained in the Baxter case and the District of Nevada explained in O'Dell, it would be entirely impractical for a supplier like Sensory to expect to have to litigate individual claims because it can't even get funding to distribute and make the device. Counsel, I understand the plight here, but this was an informal determination, was it not? It was not, Your Honor. That's my question. What kind of record do we have here to review? So, the place to look, Your Honor, is in the excerpts of record, and the entire, it begins at excerpt of record 59. What you'll see there is the request for a formal national coverage determination by Sensory. It presents an entire dossier of information. It is exactly what the regulations provide should initiate the process of a formal national coverage determination. Instead of following its own process, what the agency did is simply issue a letter saying, we're not going to do this. It's not covered. It didn't follow the regulations that are also set forth in the excerpts of record, beginning at excerpt of record 18, or 17, which provides a process that is supposed to ensue once a manufacturer provides a formal request for a national coverage determination. So, it was a formal process. It was simply... Well, I understand it was a formal process. I understand that, but what kind of record do we have of how this actually works on an individual so that we can understand the difference between this device and the chair that you sit in at the airport to put a quarter in? So, this is an issue that the District Court didn't consider, but if you look at the record, and it's quite an extensive submission between excerpt of record 59 and goes on for many, many pages, there's an extensive dossier up through excerpt of record 123 that explains exactly what this device is, exactly how it works, and provides all the kinds of information that the agency requires in order to consider a national coverage determination. And under the regulations, what the agency should have done under its own process is commence this procedure that would have culminated actually in a publication of a draft national coverage or non-coverage determination in the Federal Register. But it didn't go through that process. Wasn't there also a turn down by MAC? I'm sorry? A turn down of the approval by MAC, a Medicare contractor? Yes. In fact, there were several different steps that sensory went through. It asked for a billing code. The billing code was denied. It sought an informal benefit category determination. That would have been the informal process, but the official found that the device didn't qualify as durable medical equipment. Then it applied formally for a national coverage determination, which is the submission I was referring to, but the same official issued a letter saying, no, it's not covered. And the Secretary concedes that that was a formal request for a national coverage determination at the brief on page 19. And then because sensory was still frustrated, it actually pursued an additional meeting with the Deputy Director of the Centers and heard nothing for six months and ultimately filed this lawsuit. It was only the filing of this lawsuit that yielded finally a response to that informal meeting, which was a There was nothing informal about this. There was a different process the agency should have followed, but the fact that it didn't follow that process doesn't make this an informal result. In fact, under the regulation, it is deemed to be the fact that no process was followed means that there is a deemed national non-coverage determination. So it is quite... May I ask you a different question, please? You rely on 405G and then you reference 1395-II. Is that correct? What exactly in that letter statute do you claim provides the jurisdiction? So there are two different ways to get to jurisdiction here. The first way is through federal question jurisdiction under 1331, which you would get to by applying the Inuit Council exception. And that's what the Ninth Circuit did in the Harrow case. It's what the Ninth Circuit did in the Association of American Medical Colleges. So that would be one way to get there. Another way to get there would be to follow the District of Nevada followed, which is to actually apply 405G, the Medicare jurisdiction statute, but holds that any additional requirement of administrative exhaustion is waived. And we know it's waivable because of Matthews versus Eldridge and the many cases that have explained that the exhaustion requirement is waivable. And the issue with, and this brings me to the second ground for agency action that the government asserts, which is the agency says that Century could have had an aggrieved party challenge the NCD itself under Section 1395-FFAB by filing a complaint with the Department of Appeals Board. But again, that Avenue 2 is available only to a Medicare beneficiary. And actually the requirements, the regulations, say that that kind of review can't be assigned. So even if you could assign review of an individual benefits determination, you can't assign review of a national coverage determination, which is a very odd thing. And the reference is 42 CFR 426-320. It says that can't be assigned. What gives you your actual cause of action that you're claiming? You know, 405-G, is it some, you know, non-statutory review? What's your actual cause of action? The APA, Your Honor. This is a lawsuit for arbitrary action under the Administrative Procedure Act. But if we conclude that it arises under the Medicare statute, does the bar of No, Your Honor, because of the Illinois Council exception. The Illinois Council exception is an exception recognized by the Supreme Court to the channeling requirements of 405-H. And that exception applies when the claim that the person is attempting to assert under the APA has no opportunity for review at all at the agency. And that is exactly what we have here. And again, I want to direct the court's attention to Harrell versus Sebelius, which is a Ninth Circuit decision, where the court said that an attorney who was bringing a claim that had to do with the reimbursement of recoveries, the court said because this attorney is not a Medicare beneficiary, he did not have the opportunity to review his claim. The claim falls under the very narrow exception, which was then under Michigan Academy and is now under Illinois Council. So there's no review at all available to sensory. So does that mean that there's a denial on the decision under the APA and it goes to court? Snake oil? No, no, no, no. But there needs to be a process. The fundamental problem we have here is that the agency has not, it has given manufacturers the ability to seek a national coverage determination, but it has not provided manufacturers with any to seek administrative review within the agency. So if there is an arbitrary denial of a national coverage determination, then there has to be some opportunity for review of that. And we get there through the Illinois Council exception. The agency could solve this problem by creating an administrative avenue for review that is available to suppliers, but a supplier cannot challenge the denial of a national coverage determination, and a supplier can't even take assignment of a beneficiary's ability to challenge a national coverage determination. And even if a beneficiary challenges the denial of a national coverage determination, the result of that review does not yield a positive national coverage determination. It simply means that that person's claim for benefits needs to be assessed on its own. So none of these avenues... Your time is almost up. Yes, I apologize. You used a lot of your time with questions, so I'll give you two minutes for rebuttal, but I think we should hear at this point from Ms. Pike. Did I pronounce that correctly? Pike. Okay, I'm sorry. You may proceed. May it please the Court, Karen Pike on behalf of the Secretary of HHS. The District Court properly dismisses action for lack of jurisdiction. First, sensory claims are essentially claims for benefits. At the end of the day, sensory is seeking Medicare coverage and reimbursement for its device. Second, there are two distinct paths for meaningful administrative review of sensory use claims. Dr. Fred Burbank, a Medicare beneficiary who suffers from restless leg syndrome, should not be allowed to circumvent the administrative process by substituting the company that he founded as a plaintiff in this action. But that's kind of a sort of coincidence that he happens, you know, to be a potential user. In many situations, there'll be a company in this situation, and is it is it correct that the company itself cannot invoke the two methods that you've referred to? Yes, so Congress determined... But if that's true, why doesn't the Illinois Council exception apply? Well, in the Supreme Court case Heckler v. Ringer, the Supreme Court specifically stated that Congress clearly foreclosed the possibility of obtaining advisory opinions from the Secretary herself, requiring instead that a claim could be filed for her scrutiny only after the medical service for which payment is sought has been furnished. In that case, one of the claimants, who had not yet undergone the surgery, but was seeking some reasonable assurance that a future surgery would be covered, had informally sought an opinion from the Secretary regarding the reasonable and necessary aspect of the surgery. And the Supreme Court stated explicitly that there was no jurisdiction for that claimant's claim for future benefits. The court said, under the guise of interpreting the language of Section 405H, we refuse to undercut that choice by allowing federal judges to issue such advisory opinions. Because Ringer has not given the Secretary an opportunity to rule on a concrete claim for reimbursement, he is not satisfied the non-waivable exhaustion requirement of Section 405G. Here, Congress specifically set forth in 42 U.S.C. 1395, double F, subsection F, subsection 5, that each party must be the one to file a national coverage determination request and complaint in order to obtain a judicially reviewable final decision. That was Congress's determination that it needed a real-life Medicare beneficiary with an actual need for the device before it undertook that administrative review process. And here, there's no question that the agency is well-equipped to determine scientific questions such as whether the device constitutes durable medical equipment or a personal comfort item that should be excluded from Medicare coverage and submit that through multiple levels of appeal. Here, the Departmental Appeals Board could take additional evidence, could convene a panel of experts, can take testimony, subpoena documents, establish a full and comprehensive administrative record for its findings before issuing a final agency decision. And in fact, in Illinois Council, it was an Association of Nursing Homes that made the precise argument that Sensory is making here, that it itself did not have standing to pursue the Medicare administrative review process and therefore it should be able to go directly to federal district court. And the Supreme Court in Illinois Council confirmed that it would not issue such an advisory opinion, that it was the members of that association whose rights were at stake and those members could get adequate opportunity to review their claims in the And Dr. Burbank was the original plaintiff in this action and he himself is a Medicare beneficiary to Hazardous Flight Syndrome. And seven months later, he substituted his company as a plaintiff for this action and now is claiming that there is no access to the administrative review process. He should not be allowed to circumvent the administrative review process purely through substituting a company that he is the dominant force of and impetus for. And clearly here, Sensory has an aggrieved party, Dr. Burbank himself, available to submit the National Coverage Determination request. And if he does submit such a request and if the agency determines in its discretion that it need not issue a National Coverage Determination at that time, then it would be deemed a National Coverage... it would be a deemed NCD decision that then Dr. Burbank would be able to file a National Coverage Determination complaint with the Departmental Appeals Board for. And through that route, he can obtain a judicially reviewable final agency decision. Here... What is your view of the assignment grounds that the district court cited? The assignment statute and regulation in the Medicare statute is a routine process through which suppliers like Sensory have submitted claims and obtained administrative appeal decisions for and a final agency decision. It's very much a garden variety process that Sensory can easily avail itself of here. And Sensory has cited 5 million Medicare beneficiaries who are in need of this device. Clearly, there's no question that among those 5 million and among Sensory's own CEO, they can obtain assignment of a claim. And here, Sensory's prayer for release specifically requests Medicare reimbursement. It even fashions a Fifth Amendment due process taking claim for Medicare reimbursement, which it asserts is its property. The administrative process squarely can address Sensory's request for reimbursement. With respect to a National Coverage Determination, Sensory is claiming that it is experiencing incredible hardship because it cannot obtain funding for its device. Many manufacturers and suppliers have been able to manufacture devices without a National Coverage Determination. Sensory's decision to participate in the Medicare program is its own choice. It's voluntary. It's not an entitlement. If that's the business risk that Sensory faces, then it can pursue the National Coverage Determination request through an agreed party like its CEO, but it's certainly not entitled to a specific hearing on that contention for a The agency was proper in its response here in getting back to Dr. Burbank and telling him that it could not open a National Coverage Determination evaluation process because it could not determine a benefit category in which the device should be in. A National Coverage Determination basically mandates nationwide coverage of a device. Here, one needs at least one Medicare beneficiary in need of that device to get to the entire nation. It made perfect sense for the agency not to have to go through and jump past individual Medicare reimbursement claims to a nationwide determination if it couldn't even find a benefit category in which the device was. Here, if a Medicare beneficiary submitted a claim for reimbursement, Sensory would be able to obtain meaningful review of the questions of whether it's durable medical equipment, whether it's reasonable and necessary, or whether it should be excluded from coverage as a personal comfort item. There are qualified independent contractors who are required to have scientific and medical expertise who would then provide another layer of independent review. And then on top of that, an administrative law judge who can then decide and revise any decisions, take evidence, conduct hearings, and then beyond that, the Medicare Appeals Council can then define whether this was in fact should be covered or not covered. But in that instance, they do need a real-life Medicare beneficiary who has a concrete claim for reimbursement in order to render such opinions. And as Ringer made clear, the agency is not required to issue advisory opinions and the district court is also not required to then accept a floodgate of claims from all kinds of potential claimants, third-party manufacturers, entities that have never submitted a claim for reimbursement. What is your understanding of the nature of the record in this case and would you explain why it is deficient? The record of this case essentially constitutes informal correspondence between a third-party manufacturer and the agency officials who responded to their request for a billing code, which CMS did provide that this is a non-covered item, an informal request for a benefit category, which CMS then responded to saying that it preliminarily found that this was not durable medical equipment, and their sensory's request for a national coverage determination. And under the Federal Review Register from August 2013, the agency's response to that, that it could not open an evaluation process for that MCD request, also constitutes informal correspondence and advice. So, there's no concrete administrative record reflecting any independent findings from any of the layers of expert review that would normally constitute an administrative record for an entity seeking coverage and reimbursement. I have no further questions. I have no further questions. So do I. Counselor, do you wish to submit or do you have more to say? I have more to say, few more things in just a couple of minutes. I'm referring to Ms. Paik. Oh, I'm sorry. I wish to submit. Okay. All right. We'll set the clock at two minutes for Ms. Koberly. Thank you, sir. Your Honor, it can't be that the power of the federal courts over a case involving the corporation turns on the personal medical condition of the corporation's CEO. That would be a very bizarre result. And there's another case very similar to this that's going to be argued next month. I wonder whether the government is going to require the CEO of that corporation to present evidence about his personal medical condition to determine whether he could have filed an individual claim. It is true that Dr. Burbank originally filed this lawsuit in his own name, but he was pro se at the time. And it was not Dr. Burbank, but his company that had formally determination only to be denied. So once counsel got involved, it appropriately substituted the corporation, the party that had requested the national coverage determination for Dr. Burbank personally. Excuse me. Why couldn't they both be claimants? Dr. Burbank and the corporation? Or why couldn't Dr. Burbank get some of the other many, many people who would like to have this to file to convene or to join? Well, as counsel pointed out a moment ago, the Supreme Court has held that you can't get an advanced determination. Frankly, that's what the court held in the Ringer case, where someone wanted to try to get a particular treatment but hadn't gotten it yet, didn't have a claim for reimbursement to submit. The Supreme Court said, no, you have to wait until you get the treatment. What we're pursuing is a different thing. We're not seeking a claim for reimbursement because this product is not being prescribed. It's not being used. There are no claims to reimburse. And if there's any question about that based on our prayer for relief in the district court, I can clear it up right now. We are not seeking reimbursement for any existing prescriptions or claims based on this product. The product isn't being made. It isn't being prescribed. Thank you. My hour claim is expired. Thank you. Okay. Thank you, sir. Just argue to be submitted.
judges: Schroeder, Baylson, Collins